IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

EQUITABLE GATHERING EQUITY, LLC,
a Delaware limited liability company,
EQUITABLE PRODUCTION COMPANY,
a Pennsylvania corporation,

              Plaintiffs,

v.                                      Civil Action No. 5:07-0725

DYNAMIC ENERGY, INC.,
a West Virginia Corporation,

              Defendant.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

For their Complaint against Defendant, Dynamic Energy, Inc. ("Defendant"), Plaintiffs, Equitable Gathering Equity, LLC ("EGE") and Equitable Production Company ("EPC"), state as follows:

PARTIES

1.      Plaintiff Equitable Gathering Equity, LLC ("EGE") is a Delaware limited liability company authorized to conduct business in West Virginia.

2.      Plaintiff Equitable Production Company ("EPC") is a Pennsylvania corporation authorized to conduct business in West Virginia.

3.      Defendant is a West Virginia corporation doing business in West Virginia.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction arising out of 28 U.S.C. §1332, because there is complete diversity of citizenship between the Plaintiffs and the Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this District, or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

6. EGE owns and/or operates natural gas pipelines in West Virginia.

7. In order to market natural gas, EGE constructs and/or maintains natural gas pipelines that cross over lands owned by third parties via easement, right of way, or lease granted by the landowner or the landowner's predecessors in interest.

8. EPC is a producer and seller of natural gas and is the entity that produces and sells the natural gas that flows through the pipelines that are the subject of this civil action.

*The TL-337 Pipeline*

9. EGE is the owner and operator of a 12 inch natural gas pipeline ("Pipeline 1") designated as TL-337 that crosses real estate situate in Wyoming County, West Virginia (the "Property") pursuant to a right of way and easement dated August 7, 1946 from W.M. Ritter Lumber Company to Hope Natural Gas Company, EGE's predecessor in interest, as amended by that certain November 8, 1957, agreement between said parties.

10. EGE is informed and believes that Defendant is a lessee under a coal lease that permits Defendant to mine coal and exercise certain surface rights on the Property.

11. Earlier in 2007, Defendant requested EGE's assistance with constructing a temporary road crossing to facilitate a one-time crossing of Pipeline 1 with a transformer.

12. EGE agreed and took all necessary steps to help Defendant create a safe temporary road crossing to permit Defendant to move the transformer.

13. Because Defendant's request was for a one-time crossing of Pipeline 1 with the subject transformer, EGE did not undertake to (i) make the road crossing stable enough to qualify as a permanent road crossing, or (ii) relocate Pipeline 1 to eliminate the risks associated with multiple crossings of a temporary road crossing with coal trucks fully loaded with coal.

14. Subsequent to the construction of the temporary road crossing, Defendant had placed significant additional amounts of fill-dirt on top of the temporary road crossing without EGE's knowledge or consent.

15. Subsequent to the construction of the temporary road crossing, Defendant was routinely and continuously crossing the temporary road crossing with fully loaded coal trucks without EGE's knowledge or consent.

16. The excess fill dirt and repeated crossing of Pipeline 1 with heavy coal trucks created a risk of rupture of Pipeline 1.

17. A rupture of a 12-inch natural gas pipeline such as Pipeline 1 could cause an explosion resulting in severe injury or fatality.

18. EGE advised Defendant that the temporary road crossing was not designed to safely facilitate such continuous loads and that the placement of additional dirt on the temporary road and the continuous crossing of Pipeline 1 under such circumstances posed a safety risk.

19. EGE further requested that Defendant cease crossing the temporary road crossing with coal trucks until such time as the safety concerns could be resolved.

20. By email correspondence dated August 3, 2007, EGE forwarded Defendant a proposed Pipeline Relocation Agreement that would have facilitated relocation of portions of Pipeline 1 and construction of a permanent road crossing at an estimated cost to Defendant of $143,000.

21. By letter dated August 9, 2007, Defendant wrote to EGE advising that Pipeline 1 was not a concern to Defendant and that it viewed EGE as being solely responsible to address any safety concerns.

22. By letter dated August 14, 2007, EGE again advised Defendant of the safety hazards posed by the additional fill dirt and by the weight of the coal trucks continuously crossing the temporary road crossing. The letter further advised that Defendant would be responsible for costs associated with construction of a permanent crossing and/or relocation of Pipeline 1.

23. Subsequent to the August 14, 2007 letter, and as a result of the significant safety hazards created by Defendant's conduct, EGE constructed a permanent road crossing and relocated a certain portion of Pipeline 1.

24. The costs incurred by EGE to fortify the temporary road crossing and relocate certain portions of Pipeline 1 in order to eliminate the safety hazards caused by Defendant's conduct will be determined by or at trial.

25. EGE was required to shut in the flow of natural gas in Pipeline 1 to permit disconnection of pipes to facilitate the relocation efforts.

26. The natural gas lost as a result of the shut-in of Pipeline 1 during the pipeline relocation process had a value that will be determined by or at trial.

27. EGE has demanded that Defendant pay all costs associated with upsetting the status quo in necessitating the relocation of a pipeline that EGE had no reason to relocate other than the safety hazards caused by Defendant.

28. Defendant has benefited from EGE's fortification and relocation efforts but has refused and failed to pay EGE for construction of the road crossing and the related pipeline relocation work.

*The Ritter Lumber 306 Pipeline*

29. EGE is the owner and operator of a 2 inch natural gas pipeline ("Pipeline 2") designated as Ritter Lumber 306 that also crosses real estate situate in Wyoming County, West Virginia (the "Big Cub Creek Property") pursuant to an Oil and Gas Lease dated October 16, 1942 between W.M. Ritter Lumber Company and United Carbon Company, EGE's predecessor in interest.

30. EGE is informed and believes that Defendant is a lessee under a coal lease that permits Defendant to mine coal and exercise certain surface rights on the Big Cub Creek Property.

31. By email dated April 30, 2007, Defendant advised EGE that it intended to engage in certain surface operations, including the clearing of trees, in close proximity to Pipeline 2 and inquired how long it would take to have Pipeline 2 relocated out of the path of Defendant's operations. From April 30, 2007, to August 2007, EGE and Defendant engaged in dialogue concerning Pipeline 2 and the possible relocation thereof.

32. By email dated August 31, 2007, EGE forwarded a draft Pipeline Relocation Agreement that would have permitted relocation of certain sections of Pipeline 2 to facilitate

Defendant's mining activities. The costs to Defendant estimated under the Pipeline Relocation Agreement were $71,500.

33. Defendant failed to execute or otherwise respond to the proposed Pipeline Relocation Agreement.

34. On or about October 5, 2007, Defendant, or one of Defendant's contractors or subcontractors or agents caused damage to Pipeline 2.

35. Upon information and belief, EGE asserts that the Defendant or one of its contractors, subcontractors or agents, at Defendants direction, did knowingly, intentionally, willfully, and recklessly damage Pipeline 2.

36. At the time Pipeline 2 was damaged, Defendant was fully aware that natural gas was flowing through Pipeline 2.

37. Due to Defendant's mining operations, EGE has been unable to stabilize the damage to Pipeline 2 and has been forced to shut said pipeline down and has been precluded by Defendant from repairing the pipeline and turning it back into service.

38. Upon information and belief, subsequent to Defendant taking Pipeline 2 out of commission, Defendant has destroyed and removed large sections of Pipeline 2 without any right or permission of EGE in order to facilitate mining operations.

39. Defendant has refused all demands by EGE to pay for relocation of Pipeline 2 or for the repair thereof.

40. The natural gas lost as a result of the shut-in of Pipeline 2 since the rupture incident has a value that will be determined by or at trial.

41. EPC estimates that the gas that would otherwise flow through Pipeline 2 has a value that is quantifiable in an amount that will be determined by or at trial..

42. Plaintiffs hereby incorporates by reference each of the foregoing allegations in each of the causes of action hereafter set forth.

COUNT ONE – DECLARATORY JUDGMENT ON PIPELINE 1

43. Defendant was aware of the existence and location of Pipeline 1 prior to its request for a temporary road crossing for the one-time transport of a transformer.

44. Without EGE's knowledge or consent, and subsequent to the consensual construction of a temporary road crossing, Defendant placed significant fill dirt over the temporary road crossing and proceeded to use the same for the unsafe and continuous transport of coal.

45. Defendant's actions in altering the temporary road crossing and using the same for the continuous transport of coal was contrary to the planned use of the temporary road crossing and created a safety hazard that compelled EGE to relocate certain portions of Pipeline 1 and to construct a fortified road crossing that would facilitate the continuous crossing of Pipeline 1.

46. Defendant benefited from EGE's remedial measures in that it has caused a hazardous condition without having to incur the necessary expense to eliminate the safety hazard, all while continuing its business operations and transporting coal over Pipeline 1.

47. EGE is entitled to a judgment, consistent with the holding in *Quintain v. Columbia Natural Resources,* 556 S.E.2d 95 (W. Va. 2001) that Defendant is obligated to pay for the remedial measures undertaken by EGE to fortify the temporary road crossing and relocate portions of Pipeline 1, which remedial measures have a value in excess of $75,000.

## COUNT TWO – INTENTIONAL TORT - LOST GAS UNDER PIPELINE 1

48. Defendant's intentional acts required EGE to relocate sections of Pipeline 1 to eliminate a safety hazard.

49. EGE was required to shut in the gas that would otherwise flow through Pipeline 1 in order to facilitate a safe Pipeline relocation.

50. The lost gas resulting from the shut-in if Pipeline 1 has a value that will be determined by or at trial.

51. EPC is entitled to judgment for that Defendant is liable for a sum representing the value of the lost gas or for such other value and such additional and punitive damages as may be determined at trial.

## COUNT THREE – NEGLIGENCE - LOST GAS UNDER PIPELINE 1

52. Defendant owed Plaintiffs a duty of care to conduct such mining operations as took place within EGE's easement and in close proximity to Pipeline 1 in a safe manner and so as not to create injury or substantial risk of injury.

53. By expanding the temporary road crossing over Pipeline 1 with additional fill dirt and by engaging in the continuous crossing of Pipeline 1 with loaded coal trucks, Defendant breached its duty of care.

54. Defendant's actions forced EGE to relocate sections of Pipeline 1 to eliminate the safety risks caused by Defendant's conduct.

55. Defendant's actions were the proximate cause of EPC's damages, including the value of the gas lost during the pipeline relocation process.

56. EPC has suffered damages in an amount to be determined by or at trial.

## COUNT FOUR – DECLARATORY JUDGMENT ON PIPELINE 2

57. Defendant was aware of the location of Pipeline 2 prior to the commencement of various operations and surface mining activities in close proximity thereto.

58. Defendant requested relocation of portions of Pipeline 2 to facilitate such operations and surface mining activities.

59. At the Defendant's request, EGE forwarded a Pipeline Relocation Agreement for the relocation of Pipeline 2 that has never been executed by Defendant.

60. Subsequent to the delivery of the proposed Pipeline Relocation Agreement Defendant or one of Defendant's contractors or subcontractors intentionally damaged Pipeline 2.

61. Defendant's continued surface activities in close proximity to Pipeline 2 have caused a continuing safety hazard and have deprived and continue to deprive EPC of the use of said pipeline to transport its gas.

62. Relocation of Pipeline 2 will benefit Defendant by facilitating safe continuation of its business enterprise.

63. EGE is entitled to a declaratory judgment, consistent with the holding in *Quintain v. Columbia Natural Resources,* 556 S.E.2d 95 (W. Va. 2001) that Defendant is obligated to pay for the relocation of Pipeline 2.

## COUNT FIVE – INTENTIONAL TORT - LOST GAS UNDER PIPELINE 2

64. Defendant's intentional acts required EGE to shut in Pipeline 2 to eliminate a safety hazard.

65. EGE was required to shut in the gas that would otherwise flow through Pipeline 2 pending a determination of whether sections of Pipeline 2 should be repaired or relocated.

66. The lost gas resulting from the shut-in if Pipeline 2 since the rupture of Pipeline 2 has a value to be determined by or at trial.

67. The value of the lost gas caused by the continued shut-in of Pipeline 2 has a quantifiable value to be determined by or at trial.

68. EPC is entitled to judgment that the Defendant is liable for a sum representing the value of the lost gas or for such other value and such additional and punitive damages as may be determined at trial.

## COUNT SIX – NEGLIGENCE - LOST GAS UNDER PIPELINE 2

69. Defendant owed Plaintiffs a duty of care to conduct such mining and other surface operations as took place within EGE's easement and in close proximity to Pipeline 2 in a safe manner and so as not to create injury or substantial risk of injury.

70. By rupturing Pipeline 2, either on its own or through the use of contractors or subcontractors, Defendant breached its duty of care.

71. Defendant's actions forced EGE to shut in the natural gas that would have otherwise continued to flow through Pipeline 2 and generate income for EPC.

72. Defendant's actions were the proximate cause of EPC's damages, including the value of the gas lost since the rupture and the value that EPC continues to lose as a result of the continued shut-in of Pipeline 2.

73. EPC has suffered damages in an amount to be determined by or at trial.

## COUNT SEVEN – INJUNCTION

74. The Defendant's actions pose safety hazards to EGE's pipelines, including Pipeline 1 and Pipeline 2. Such hazards are evident by the past unsafe operation of coal mining trucks across Pipeline 1 and the damage caused to Pipeline 2.

75. Plaintiffs, and likely Defendant, Defendant's contractors, subcontractors, agents and other third parties, will suffer immediate and irreparable harm if Defendant's surface activities continue in close proximity to EGE's Pipelines in an unsafe manner.

76. The only two means by which the safety hazard can be eliminated are (i) cessation of Defendant's unsafe practices in close proximity to EGE's pipelines, or (ii) EGE's relocation at Defendant's expense of any such affected pipelines.

77. EGE has no adequate remedy at law for the safety hazards posed by Defendant's conduct.

78. Plaintiff is entitled to a preliminary and permanent injunction prohibiting Defendant, or Defendant's agents, contractors or subcontractors, from operating machinery on or in close proximity to EGE's pipelines in an unsafe manner, including Pipeline 2, until the same are fortified and protected or relocated by EGE at Defendant's expense.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court grant the following relief:

(a) Grant judgment against Defendant in the amount to be determined at trial for the matters in Counts 1, 2 and 3, plus punitive damages for the Defendant's intentional, willful and/or reckless conduct as alleged in Count 3, plus (i) prejudgment and post-judgment interest, (ii) costs, and (iii) attorney's fees, all to the extent permitted under applicable law;

(b) Grant declaratory judgment for the matters asserted in Count 4 that Defendant must allow EGE access to Pipeline 2 to relocate the same, and that Defendant is obligated to pay for the costs to relocate Pipeline 2;

(c) Grant judgment against Defendant in an amount to be determined at trial for the matters in Counts 5 and 6, plus punitive damages for the Defendant's intentional, willful and/or reckless conduct as alleged in Count 5, plus (i) prejudgment and post-judgment interest, (ii) costs, and (iii) attorney's fees, all to the extent permitted under applicable law;

(d) Grant a preliminary and permanent injunction enjoining Defendant from engaging in any further surface activities that pose significant safety risks to any of EGE's pipelines, including Pipeline 1 and Pipeline 2;

(e) Grant Plaintiffs a trial by jury on all issues so triable; and

(f) Grant such other and further relief as the Court may deem just.

                                                  EQUITABLE GATHERING EQUITY, LLC
                                                  EQUITABLE PRODUCTION COMPANY
                                                  By Counsel

LEWIS, GLASSER, CASEY & ROLLINS, PLLC

By: /s/  John A. Rollins
John A. Rollins (WV Bar #3165)
Richard L Gottlieb (WV Bar #1447)
Spencer D. Elliott (WV Bar #8064)
Suite 700, BB&T Square
P.O. Box 1746
Charleston, WV 25326
(304) 345-2000
Facsimile (304) 343-7999